# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 16-70008

—————

ANTHONY SHORE,

      Petitioner - Appellant,

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional
Institutions Division,

      Respondent - Appellee.

————————

Appeal from the United States District Court
for the Southern District of Texas

————————

United States Court of Appeals
Fif h Circuit

**FILED**

January 6, 2017

Lyle W. Cayce
Clerk

Before CLEMENT, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Petitioner Anthony Shore seeks a certificate of appealability (COA) from this court in order to appeal the district court's denial of his habeas petition. He asserts the following grounds for relief: (1) Shore was denied his constitutional right to present mitigation evidence to the jury; (2) Shore's right to counsel was violated by trial counsel's failure to conduct an adequate mitigation investigation, failure to present evidence of Shore's brain damage, and failure to represent Shore during the punishment phase of his trial; and (3) Shore's brain injury renders his execution a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Because

reasonable jurists would not debate the district court's rejection of these claims, we DENY Shore's application for a COA.

I.

Shore was charged with the capital murder of Maria Del Carmen Estrada during the course of an aggravated sexual assault. *Shore v. Stephens*, No. H-13-1898, 2016 WL 687563, at *3 (S.D. Tex. Feb. 19, 2016). Shore voluntarily confessed that he offered the twenty-one-year-old a ride in his car, used a pair of shears to aid his attempt to rape her, and ultimately strangled her. *Id.* at *2. His confession was supported by detailed forensic evidence and witness testimony. *Id.* at *3. Defense counsel admitted that Shore killed Ms. Estrada and that Shore had sexual relations with her against her will, but argued that Shore should be found guilty of simple murder rather than capital murder. *Id.* Shore was convicted of capital murder. *Id.* at *4.

In the opening argument of the trial's punishment phase, Shore's defense counsel stated, "Against our advice, against our better judgment, against our 40 years of experience, Anthony has asked on his behalf that we ask you to answer those [special-issue] questions in such a way that he's sentenced [to] death." *Id.* Counsel explained, "It is where he is and it is what he thinks should happen to him based upon how he has lived his life." *Id.* Counsel also stated, "Anthony still believes that despite all of that, despite the fact that he's been able to sit in jail now for over a year and not violate the rules of the institution, it is time for him to sacrifice his life for what he has done." *Id.*

The State provided the jury a recording of Shore's full confession, which described additional murders and sexual assaults. *Id.* at *5. Shore strangled three women besides Estrada to death. *Id.* at *2–3. The first was a fourteen-year-old whom he had sexually assaulted. *Id.* at *2. The second was a nine-year-old whom he raped or attempted to rape. *Id.* at *3. The third was a

sixteen-year-old whom Shore touched and stripped, but whom he claimed he did not sexually assault. *Id.* Shore also raped a fourteen-year-old girl whom he did not murder, but whom he threatened to kill, along with her family, if she reported his crime. *Id.* at \*2. Shore stated during his confession that this rape proved he could "beat the evilness" by raping a woman without killing her. *Id.*

The State supplemented Shore's confession with extensive evidence and testimony. The State corroborated Shore's murders with forensic evidence, including photographs of his victims' corpses. *Id.* at \*5. It also called thirty-five witnesses, including Shore's sister, daughters, and wife, three of Shore's former girlfriends, and the clinical director of a sex offender program in which Shore had participated for five years. *Id.* Shore's sister testified that he stabbed a kitten to death when he was four or five, that he pushed a screwdriver through his sister's head when they were children, and that he used his sister to get girls in the neighborhood to come out of their houses so he could grope and try to kiss them. *Id.* Shore's daughters testified about being abused, drugged, and molested by Shore. *Id.* His wife and former girlfriends testified that he drugged and raped them, choked them while having sex, used drugs, and kept pornography of young girls. *Id.* The clinical director of Shore's sex offender program testified that he had superior intellectual and abstract reasoning abilities; was grandiose, opportunistic, manipulative, and narcissistic; understood what was socially acceptable but had sexual deviations and would break a law if he thought he could get away with it; and scored high on a measure of psychopathy. *Id.*

After the State had presented its case, Shore's counsel told the trial court that additional discussion had not changed Shore's mind about requesting the jury to give him the death penalty. *Id.* at \*6. Counsel expressly stated that

No. 16-70008

Shore "made it quite clear . . . that he doesn't want [his attorneys] to in any way argue to the contrary" and that this was the reason counsel was waiving a closing argument. *Id.* The trial court asked Shore if his counsel had accurately represented his instructions, and Shore replied, "That is very accurate." The jury sentenced Shore to death. *Id.* at *6.

Shore sought direct and collateral relief in state court.[1] The Texas Court of Criminal Appeals affirmed his conviction on direct appeal. *Shore v. State*, No. AP-75049, 2007 WL 4375939, at *1 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication). Shore's state habeas petition raised numerous points of error, including constitutional claims based on the trial court's failure to inquire on the record whether Shore's decision to waive the presentation of mitigating evidence was competent, knowing, and voluntary; the trial court's failure to inquire on the record whether there had been any investigation for mitigating evidence and what the results of any such investigation were; counsel's decision to sit silent during the punishment phase of the trial; and counsel's failure to object to various pieces of evidence. The state trial court rejected these arguments and denied Shore's habeas petition, adopting the State's proposed findings of fact and conclusions of law without an evidentiary hearing. *Ex Parte Shore*, No. WR-78133-01, 2013 WL 173017, at *1 (Tex. Crim. App. Jan. 16, 2013) (not designated for publication). The Texas Court of Criminal Appeals also rejected Shore's habeas petition, adopting the trial court's findings and conclusions. *Id.*

Shore then filed a federal habeas petition supported by seven new exhibits. The district court denied Shore relief on his habeas petition and

---

[1] Shore's trial counsel moved to withdraw. The trial court appointed a new attorney to represent Shore on direct appeal and then appointed a different attorney to represent Shore on state habeas review. *See Shore*, 2016 WL 687563, at *6.

4

declined to issue a COA. *Shore*, 2016 WL 687563, at \*20. The district court rejected Shore's claim that the trial court failed to obtain a valid waiver of his right to challenge the State's punishment case. It reasoned that no Supreme Court precedent required trial courts to obtain a knowing waiver on the record and that Shore had provided no basis for challenging the state courts' finding of a valid waiver, which was supported by the record. *Id*. at \*8–10. The district court rejected Shore's *Strickland* claims regarding trial counsel's failure to conduct a reasonable investigation into mitigating evidence, failure to present evidence of organic brain damage, and failure to contest the State's punishment case because Shore's waiver barred these claims. It reasoned that these claims relied on evidence barred by *Pinholster* and that, even with the benefit of his newly-proffered evidence, Shore could not show that counsel was deficient or that counsel's alleged deficiencies prejudiced his defense. *Id*. at \*10–18. Finally, the district court rejected Shore's claim that his brain damage made his execution unconstitutional under the Eighth and Fourteenth Amendments. It reasoned that this claim was unexhausted and therefore not properly before the court and that this claim sought to create and apply a new rule of constitutional law in violation of *Teague*. *Id*. at \*19. Shore applied to this court for a COA in order to appeal the denial of his federal habeas petition. After thorough review of the briefing and careful consideration of the positions taken at oral argument, we conclude that Shore's application must be denied.

## II.

Section 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs this court's consideration of Shore's request for a COA. Under AEDPA, a state habeas petitioner must obtain a COA before he can appeal the federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). A COA is warranted upon a "substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). To obtain a COA after a district court has denied relief on procedural grounds, a petitioner must show both a debatable claim on the merits and that the district court's procedural ruling is debatable. *See id.* at 349. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336.

The court evaluates the debatability of Shore's constitutional claims through the lens of AEDPA's highly deferential standard, which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). A federal court may not grant habeas relief unless the petitioner has first exhausted state remedies with respect to the claim at issue. 28 U.S.C. § 2254(b). A habeas petitioner must prove that the state court's constitutional adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Clearly established federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is contrary to clearly established federal law if it "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 413.

When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the factual findings of state trial and habeas courts. *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Federal courts are limited to the record before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The district court reviews "only the ultimate legal determination by the state court—not every link in its reasoning." *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013) (citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002)). Where a state court habeas decision is unaccompanied by explanation, "a federal court must 'determine what arguments or theories . . . could have supported the state court's decision,' and then ask 'whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision' of the Supreme Court." *Williams v. Thaler*, 684 F.3d 597, 603 (5th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 88 (2011)).

## III.

Shore is not entitled to a COA on his claim that he was denied his constitutional right to present mitigation evidence to the jury under *Lockett v. Ohio*, 438 U.S. 586 (1978). The Supreme Court held in *Lockett* that the Eighth and Fourteenth Amendments require individualized consideration of mitigating factors. *Id.* at 604–08. However, Shore waived the right to present mitigation evidence by instructing trial counsel not to argue against the death penalty. Shore argues that this waiver was invalid because it was not reflected on the record and because he could not have knowingly waived the right to

present evidence of brain damage when he was not aware of that evidence.[2] This argument is barred by *Teague* and is not adequately supported by the evidence.

The Supreme Court's decision in *Teague* bars federal courts from applying new constitutional rules to upset state convictions on collateral review. *Teague v. Lane*, 89 U.S. 288, 310 (1989); *see also* 28 U.S.C. § 2254(d)(1). Shore's argument depends on a proposed rule of constitutional law requiring that a waiver of the right to present mitigation evidence be made knowingly and on the record. The district court correctly observed that the Supreme Court has never imposed such a requirement. *Shore*, 2016 WL 687563, at *10 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 479 (2007)). It is undebatable among jurists of reason that to create such a new requirement and impose it here would violate *Teague*. Therefore, Shore is not entitled to a COA on his *Lockett* claim.

Even if Shore's argument were not barred by *Teague*, reasonable jurists would not debate that Shore has failed to present evidence sufficient to overcome the presumption of correctness afforded to the state habeas courts' implicit finding that the record shows a knowing, intelligent, and voluntary waiver. *See* 28 U.S.C. § 2254(e)(1); *Dretke*, 356 F.3d at 629. In the face of this presumption of correctness, Shore argues that his waiver was not knowing as to subsequently discovered evidence of brain damage, relying on two reports to show that a subsequent discovery of evidence occurred. Setting aside any questions about the strength of this evidence, Shore's reports are not properly presented for our consideration on habeas review because they were not

---

[2] Shore's briefing expressly states that his competence is not at issue and that he is not claiming that he is intellectually disabled. At oral argument, Shore's counsel again conceded Shore's intelligence and affirmed that Shore's competence is not at issue.

presented in state court. *See Pinholster*, 563 U.S. at 182; *see also* 28 U.S.C. § 2254(d)(2). Thus, the evidence Shore cites would be insufficient to displace the state courts' finding of a valid waiver even if his *Lockett* claim were not barred by *Teague*. For this reason also, Shore is not entitled to the relief he seeks under *Lockett*.

## IV.

Shore is also not entitled to a COA on his claims under *Strickland v. Washington*, 466 U.S. 668 (1984). Shore argues that his trial counsel was constitutionally deficient for failing to conduct an adequate mitigation investigation, to present evidence of Shore's brain damage, and to represent Shore during the punishment phase of the trial. These arguments are foreclosed both by Shore's instructions to his counsel and by the fact that they are based on new evidence and legal theories.

A defendant cannot raise a *Strickland* claim based on counsel's compliance with his instructions. *See United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990) ("[A defendant cannot] avoid conviction on the ground that his lawyer did exactly what he asked him to do."); *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can [a defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient."). If a defendant instructs his attorney not to present mitigation evidence, the failure to present this evidence does not give rise to a *Strickland* claim. *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007). Such an instruction also bars the defendant from raising a *Strickland* claim based on failure to investigate mitigation evidence. *Landrigan*, 550 U.S. at 475–76. In light of Shore's confirmation that he instructed counsel not to argue against the death penalty, the state habeas courts acted reasonably in rejecting Shore's claim, and the district court correctly affirmed.

No. 16-70008

Shore's *Strickland* claims also violate the rule prohibiting federal habeas courts from considering evidence that was not presented in state court. *See Pinholster*, 563 U.S. at 182; *see also* 28 U.S.C. § 2254(b). Shore argues that two of his *Strickland* claims are unexhausted and that *Pinholster* does not bar consideration of new evidence in connection with unexhausted claims.[3] Assuming *arguendo* that this is correct, Shore's new evidence is admissible only if he can show that his unexhausted claims are properly before this court. To do so, he invokes *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). However, Shore's invocation of *Trevino* and *Martinez* is unavailing for two reasons. First, the argument is abandoned because it was not raised in Shore's initial brief on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Second, the briefing provides no factual basis for an allegation that habeas counsel was deficient. *See Martinez*, 132 S. Ct. at 1318. Because Shore cannot effectively invoke *Trevino* and *Martinez*, his unexhausted *Strickland* claims are not properly before this court. His remaining *Strickland* claims are subject to *Pinholster*. Therefore, the new evidence on which Shore seeks to rely is not properly before this court. Shore is not entitled to a COA on his *Strickland* claims.

V.

Finally, Shore is not entitled to a COA on his Eighth Amendment claim that his execution would be cruel and unusual in light of his brain injury. The district court correctly found that this claim is procedurally barred because it

---

[3] The parties agree that Shore has not exhausted his claim that counsel should have investigated mitigation evidence other than evidence of brain damage. Shore argues that he also has not exhausted his claim that counsel failed to represent him during the punishment phase because his new evidence makes the argument fundamentally different from the one presented to the state habeas courts.

10

was not raised on state habeas review.[4] *Shore*, 2016 WL 687563, at *19; *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997). It is also barred by *Teague* because it does not rely on the holding of any Supreme Court precedent but instead seeks to extend the reasoning of *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Roper v. Simmons*, 543 U.S. 551 (2005). Finally, this argument is foreclosed by the numerous Fifth Circuit precedents rejecting the proposition that the Eighth Amendment prohibits execution of those who have brain problems but are not intellectually disabled, as Shore's counsel acknowledged at oral argument. *See Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 951 (2015); *ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007); *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006).

## VI.

For the reasons stated above, we conclude that the district court's denial of Shore's habeas petition would not be debatable among jurists of reason. Accordingly, we DENY Shore's application for a COA.

---

[4] Shore argues that the miscarriage of justice exception to the procedural bar on unexhausted claims applies here. This exception requires a petitioner to show that he has a colorable claim of factual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Because Shore has not made this showing, the exception does not apply.