# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70007

RAY MCARTHUR FREENEY,

       Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

       Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-373

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

      Ray McArthur Freeney was convicted of capital murder in Texas state court and sentenced to death. He sought post-conviction relief, alleging that his state trial counsel rendered ineffective assistance during sentencing. The state habeas court rejected the claim on the merits. Freeney subsequently filed for habeas relief in federal court. The district court denied relief and declined

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70007

to issue a certificate of appealability (COA).  Freeney now applies for a COA from this court.  We deny his application.

## I

At trial, the State established, based in part on Freeney's detailed confession, that Freeney had brutally raped and killed two young women.[1]  As recounted by the Texas Court of Criminal Appeals, Freeney's first victim, Kirshalynne Jones, was a fifteen-year-old who occasionally worked as a prostitute.  He went with her to her motel room,[2] and upon arriving, he placed her in a "choke hold" until she lost consciousness.  For fifteen minutes, he attempted to have vaginal intercourse with her while she was unconscious.  When she regained consciousness, Freeney stabbed her in the chest and neck and then forced her to perform oral sex.  In his confession, Freeney noted that as Jones died at the foot of the bed, she had a "bleak look in her eyes."  Freeney then used water to clean the surfaces he had touched, placed Jones's body in the bathtub, and left.

Four days later, Freeney took his second victim, Vicky Dean, to his apartment, where he gave her juice laced with a "sleeping aid."  While preparing the drugged beverage, Freeney armed himself with a knife.  After Dean drank the juice, Freeney told her to lie on the bed, saying he would massage her.  When she complied, he stabbed her in the neck, leading to a physical altercation during which Freeney continued to stab her.  "After the first few stabs," Dean submitted and took off her clothes.  Freeney attempted to have vaginal intercourse then had Dean perform oral sex.  When Freeney ejaculated, they fought again, at which point Freeney stabbed Dean in the eye.

---

[1] *See* 19 RR 95.

[2] *Freeney v. State*, No. AP-74,776, 2005 WL 1009560, at *1, *3 (Tex. Crim. App. Apr. 27, 2005).

She asked Freeney to "[p]ull this knife out of me so I can die."[3]  He did not,[4] but instead covered her with bedding and exited through a window.[5]  She later died from her wounds.[6]

The jury found Freeney guilty of capital murder.[7]  During the sentencing phase of the trial, Freeney called eight witnesses.  Dr. Longmire, an expert in the Texas Department of Criminal Justice's (TDCJ's) inmate classification system, testified that the TDCJ would place Freeney in the highest available custody level, in which prisoners have limited access "to jobs, civilians, and other opportunities" and are supervised by well-trained guards.[8]  He also noted that TDCJ prisons have a relatively low rate of acts of violence in the general prison population.  He testified that TDJC provides medication for mentally ill inmates as well as units designed specifically for mentally ill inmates and that inmates convicted of capital murder are four times less likely to commit acts of violence than the general prison population.[9]  Longmire also testified that no inmate convicted of capital murder has been granted parole.[10]

Freeney's psychiatrist, Dr. G.K. Ravichandran, who treated Freeney for several years prior to trial, also testified.  Dr. Ravichandran recounted that he diagnosed Freeney with schizoaffective disorder and that Freeney had symptoms of bipolar disorder.  Ravichandran testified that Freeney did not appear to be malingering.  Dr. Daneen Milam, a neuropsychologist who testified on Freeney's behalf, largely echoed Dr. Ravichandran's conclusions.  Milam diagnosed Freeney with schizophrenia and major depression but opined

---

[3] SHCR at 162.

[4] SHCR at 162.

[5] SHCR at 164-65.

[6] 18 RR 73-74.

[7] 4 CR 639.

[8] SHCR at 264.

[9] SHCR at 264.

[10] SHCR at 264.

that medication could control Freeney's behavior in prison.[11]  She noted that Freeney had ceased taking his medication for between two weeks to three months before committing the crimes and that she believed Freeney had suffered another psychotic break shortly before the murders.[12]  She also testified that Freeney's childhood "was pretty ok," that he was quiet, reserved, and tidy as a child, but that his uncle sexually abused him, and that his first psychotic break occurred while serving in the National Guard, resulting in a medical discharge.[13]

Freeney called several character witnesses.  Leon Dwight Bey testified that Freeney had described instability in his life and abuse he had suffered as a child.[14]  Kobina Bryant, a friend who had known Freeney for twenty years, stated that she had observed significant changes in Freeney's behavior, including multiple paranoid episodes, after Freeney spent time serving in the National Guard.[15]  Cassandra Rouse, a long-time friend of Freeney's mother, attested that during childhood, Freeney was not aggressive but became "distant" and "angrier" after serving in the National Guard.[16]  Lisa Angelle, a friend of Freeney's mother and a babysitter for Freeney during his childhood, testified that she thought him to be a "normal kid" but observed that Freeney behaved differently and did not take good care of himself after serving in the National Guard.[17]  Freeney's mother testified that Freeney was "normal" as a child, she had been a strict parent, and Freeney began experiencing schizophrenic incidents during his National Guard service.[18]

---

[11] 22 RR 233-36.
[12] SHCR at 267.
[13] SHCR at 266-67.
[14] 22 RR 122-30.
[15] 22 RR 135-45.
[16] 22 RR 151-59.
[17] 22 RR 163-70.
[18] 22 RR 178-89.

After considering this evidence, the jury sentenced Freeney to death.[19] The Texas Court of Criminal Appeals affirmed Freeney's conviction.[20] While the appeal was pending, Freeney filed a state habeas application,[21] which included an ineffective-assistance-of-trial-counsel claim asserting that Freeney's trial attorneys did not adequately investigate and develop mitigating evidence.[22]   In particular, Freeney argued that trial counsel should have interviewed several of Freeney's relatives, who could have provided support for the proposition that Freeney's mental instability in adulthood is due at least in part to his "dysfunctional and abusive childhood."[23]   Freeney presented new information through affidavits attached to his petition, including testimony from Freeney's half-brother that their mother was mentally and verbally abusive toward her children and disciplined them with beatings that left bruises and that Freeney's half-brother "had heard [that Freeney's uncle] Calvin had molested [Freeney]."[24]   Freeney's aunt and another half-brother of Freeney's averred that Freeney was aggressive and prone to instigating fights as a child,[25] and Freeney's aunt averred that Freeney's mother was often violent and once hit Freeney on the head with a can.[26]

After reviewing the new affidavits, Dr. Cecil Reynolds, who had served as a consulting expert to trial counsel, attested that in preparing his pre-trial memorandum, he had not been aware of the extent of the violence in Freeney's household when Freeney was growing up.[27]   Dr. Milam also reviewed the new

---

[19] 24 RR 4.
[20] *Freeney v. State*, No. AP-74,776, 2005 WL 1009560 (Tex. Crim. App. Apr. 27, 2005).
[21] SHCR 2-89.
[22] SHCR 2-6.
[23] SHCR 7; *see* SHCR 7-19, 36-59, 80-81.
[24] SHCR 7-9.
[25] SHCR 8-9, 18.
[26] SHCR 18.
[27] SHCR 20-22.

affidavits and concluded that "without knowledge of [Freeney's] childhood which was marked by physical, sexual and emotional abuse, neglect and inadequate supervision, along with clear indications of early onset of mental illness, the jury would not be able to make a fair and balanced assessment of his personal moral culpability."[28]

In addition to the affidavits from family members, the state habeas application also included affidavits from Freeney's trial counsel, Layton Duer[29] and Robert Loper.[30]  Duer's affidavit stated that he and Loper undertook a "thorough pre-trial investigation" that included hiring an investigator, a mitigation specialist, and mental health experts, and that also included interviews with family members "with regard to possible history of mental illness, abuse as a child, and possible history of violence."[31]  Loper's affidavit was similar to Duer's and noted that both trial counsel and the mitigation specialist asked the witnesses whom they interviewed about any additional witnesses who might be available to testify.[32]  However, Loper added that the newly provided affidavits from family members raised issues that he "would have certainly wanted to know about."[33]  He stated that if the new affidavits are accurate, "it [then] appears that [Freeney's] mother was not forthcoming and actually was untruthful" about certain aspects of Freeney's upbringing.[34]

The State and Freeney both submitted proposed findings of fact and conclusions of law to the state habeas court.  The state habeas court entered an order adopting the State's proposed findings and conclusions, and

---

[28] SHCR at 228.
[29] SHCR at 236-37.
[30] SHCR at 240-44.
[31] SHCR at 236.
[32] SHCR at 243.
[33] SHCR at 243.
[34] SHCR at 243-44.

recommended that the Texas Court of Criminal Appeals deny Freeney relief.[35] The Court of Criminal Appeals, however, remanded for further findings as to whether the lay affiants were available to testify and as to the extent to which trial counsel had investigated and spoken with those affiants.[36] The state habeas trial court ordered the parties to obtain affidavits from the lay affiants and Freeney's former trial counsel relating to these issues[37] and "to file proposed findings of fact and conclusions of law within twenty-one days following receipt of the affidavits from Applicant's former trial attorneys."[38] Freeney submitted additional affidavits from the lay affiants,[39] and one of Freeney's trial counsel submitted an affidavit.[40] The State submitted proposed findings of fact and conclusions of law.[41] Six days later, before Freeney had filed proposed findings of fact and conclusions of law, the state habeas court adopted the State's proposed findings and conclusions, and again recommended that relief be denied. The Texas Court of Criminal Appeals agreed with the state habeas court's recommendation, adopted its findings and conclusions, and denied relief.[42]

Freeney subsequently filed a federal habeas petition.[43] The Director of the Criminal Institutions Divisions of the Texas Department of Criminal Justice (Director) moved for summary judgment. The district court granted the motion, holding that 28 U.S.C. § 2254(d) applied and that the state court's determination was objectively reasonable as to the performance of counsel and

---

[35] SHCR at 248-99.

[36] *Ex parte Freeney*, No. WR-78, 109-01, 2013 WL 1182745, at *1-2 (Tex. Crim. App. Mar. 20, 2013).

[37] Supp. SHCR at 29-30.

[38] Supp. SHCR at 24.

[39] Supp. SHCR at 46.

[40] Supp. SHCR at 98-101.

[41] Supp. SHCR at 97-110.

[42] Order 1–2, *Ex parte Freeney*, No. WR-78,109-01 (Tex. Crim. App. Aug. 20, 2014).

[43] R. at 26-81.

## No. 16-70007

as to the prejudice prong of an ineffective-assistance-of-counsel claim.[44]  The district court held in the alternative, after applying a de novo standard of review, that habeas relief was not warranted.  The district court denied Freeney a COA.[45]  Freeney applied for a COA from this court.[46]

## II

For a state prisoner seeking federal habeas relief, the issuance of a COA is a jurisdictional prerequisite to appellate review.[47]  We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right,"[48] meaning that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[49]  Stated another way, we are restricted to "ask[ing] 'only if the District Court's decision was debatable;'" if not, a COA may not issue.[50]  This standard allows a COA to issue "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."[51]

The Supreme Court has cautioned that, at this threshold stage, we are to refrain from "full consideration of the factual or legal bases adduced in support of the claims."[52]  Our focus must remain on the limited inquiry as to whether a COA should issue and avoid the merits of the appeal as a means to justify a denial of a COA.[53]  In a capital case, should any doubt remain after

---

[44] R. at 307-36.

[45] R. at 335-37.

[46] R. at 338.

[47] *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).

[48] 28 U.S.C. § 2253(c)(2).

[49] *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

[50] *Id.* (quoting *Miller-El*, 537 U.S. at 348).

[51] *Id.* (quoting *Miller-El*, 537 U.S. at 338).

[52] *Id.* (quoting *Miller-El*, 537 U.S. at 336).

[53] *Id.* (quoting *Miller-El*, 537 U.S. at 336-37).

this inquiry as to the propriety of a COA, we resolve those doubts in the petitioner's favor.[54]

## III

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), federal habeas relief is available to petitioners "in custody pursuant to the judgment of a State court" on the basis of "any claim that was adjudicated on the merits in State court"[55] when the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"[56] or if the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[57]

## A

Freeney argues that reasonable jurists could debate whether the deferential lens through which AEDPA requires courts to examine claims "adjudicated on the merits in State court" is inapplicable. Freeney asserts that the state habeas court deprived him of due process by adopting the State's proposed findings of fact and conclusions of law before Freeney had submitted his. Freeney contends that the state court misled him "into believing that he would have an opportunity to be heard but then chose to hear only from the State and to adopt, unedited, the State's proposed findings of fact and law," resulting in a claim that was not "adjudicated on the merits."[58] No reasonable jurist could debate the merits of this claim.

---

[54] *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014) (quoting *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005)).

[55] 28 U.S.C. § 2254(d).

[56] *Id.* § 2254(d)(1).

[57] *Id.* § 2254(d)(2).

[58] *Id.* § 2254(d).

In determining "whether an 'adjudication on the merits' occurred, we have looked at whether the state court reached the merits of the petitioner's claim rather than deciding it on procedural grounds."[59]  We have held that "a full and fair hearing in state court is not a prerequisite to applying AEDPA's deferential scheme."[60]  That is because "[t]he term 'adjudication on the merits' . . . refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons.  It does not speak to the quality of the process."[61]

Freeney relies on *Johnson v. Williams*[62] in arguing that the "Supreme Court has subsequently rejected this narrow interpretation" of "adjudication on the merits."  He argues that the Court instead reasoned that an adjudication on the merits does not occur unless it comports with "the fundamental due process guarantee [of] . . . an opportunity to be heard."  But *Johnson* addressed whether a federal claim should be considered adjudicated on the merits when the state court "issues an opinion that addresses some issues but does not expressly address the federal claim in question."[63]  It did not address the quality of the state court process, and no reasonable jurist could read *Johnson* as undermining our binding precedent.

In any event, Freeney received an "opportunity to be heard" in the state habeas court.  He filed a petition, proposed findings of fact and conclusions of law in the initial state habeas proceeding, and affidavits introducing new evidence to support his arguments.  "[B]ecause our precedent does not require

---

[59] *Valdez v. Cockrell*, 274 F.3d 941, 952 (5th Cir. 2001).

[60] *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010).

[61] *Valdez*, 274 F.3d at 950 (citations omitted) (quoting 28 U.S.C. § 2254(d)); *cf. Browning v. Trammell*, 717 F.3d 1092, 1102 (10th Cir. 2013) (noting that no "authority establish[es] that 'adjudication on the merits' necessarily requires an adversarial proceeding").

[62] 568 U.S. 289 (2013).

[63] *Johnson*, 568 U.S. at 292.

a full and fair hearing, and because the record reflects that [Freeney] had ample opportunity to 'develop his claims' before the state habeas court, reasonable jurists could not debate whether the district court properly applied Section 2254 deference in its review of the state habeas court's findings of fact and conclusions of law."[64]  Freeney has not shown that a reasonable jurist could argue that his claim was not adjudicated on the merits.  Freeney's invocation of the "general limits to the rules of preclusion" in order to bypass AEDPA deference is not well-taken.  Congress, in enacting AEDPA, spoke directly to the requirements that occasion deference to state court adjudications.[65]  A reasonable jurist could not ignore its command by resorting to general principles of preclusion.

Freeney argues that the alleged shortcomings in the state habeas court's procedures constitute an "antecedent unreasonable application of [clearly established] due process" law, exempting his claim from AEDPA deference under 28 U.S.C. § 2254(d)(1).[66]  He asserts that "the state court was required to provide Mr. Freeney with an opportunity to be heard and was required to give notice of when and how Mr. Freeney would be heard."[67]  Our precedent forecloses this argument.  We have previously stated that "[i]t certainly does not amount to a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" to deny a petitioner "any opportunity to object or

---

[64] *Rockwell v. Davis*, 853 F.3d 758, 761 n.5 (5th Cir. 2017).

[65] *See Resolution Tr. Corp. v. Miramon*, 22 F.3d 1357, 1360-61 (5th Cir. 1994).

[66] *See Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("It is axiomatic that infirmities in state habeas proceedings under state law are not a basis for federal relief.  Indeed, we have also held that a full and fair hearing in state court is not a prerequisite to applying the AEDPA's deferential scheme.  The Supreme Court has recognized, however, that a state court's unreasonable application of federal law, as a predicate for adjudicating a defendant's claim, may undermine the AEDPA deference given to the state court adjudication." (citations omitted)).

[67] Freeney Supp. Br. at 17.

seek changes or clarifications to the findings in the State's proposed order, which the state court requested *ex parte*, and signed verbatim."[68]  For the same reason, Freeney's assertion that reasonable jurists could debate the state habeas court's decision to render a recommendation before this submission and before twenty-one days had elapsed from when one of Freeney's trial counsel submitted an affidavit is without merit.  He cites no precedent—much less clearly established federal law[69]—suggesting that this decision was in error, and our review reveals none.  No reasonable jurist could claim that the state habeas court's procedures violated clearly established due process law.

## B

Freeney raises several objections to the state habeas court's resolution of the merits of his ineffective-assistance claim.  To be entitled to relief, Freeney must "show both that his counsel provided deficient assistance and that there was prejudice as a result."[70]  This standard is "highly deferential."[71]  For trial counsel's performance to be deficient, it must fall below an objective standard of reasonableness such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[72]  There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."[73]  To establish prejudice, Freeney must do more than "show that the errors had some conceivable effect on the outcome of the proceeding."[74]  Rather, he must show "a reasonable probability"—that is, "a probability sufficient to undermine confidence in the outcome"—"that,

---

[68] *Green v. Thaler*, 699 F.3d 404, 415-16 (5th Cir. 2012) (internal quotations removed).

[69] *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

[70] *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

[71] *Id.* at 105 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

[72] *Id.* at 104 (quoting *Strickland*, 466 U.S. at 687).

[73] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[74] *Id.* (quoting *Strickland*, 466 U.S. at 693).

but for counsel's unprofessional errors, the result of the proceeding would have been different."[75]  For a COA to issue, jurists of reason must be able to debate whether Freeney established both deficiency and prejudice.[76]

Freeney argues at length that the state habeas court unreasonably applied *Strickland v. Washington*.[77]  He primarily does so by examining the state habeas court's reasoning.  But when assessing whether a state habeas court unreasonably applied federal law,[78] we review "only the ultimate legal determination by the state court—not every link in its reasoning."[79]

Freeney makes a number of claims challenging the state habeas court's holding that he failed to establish that his trial counsel performed deficiently.  First he argues that the court improperly required him to "prove the truth of the mitigating evidence alleged to have been undiscovered by trial counsel by a preponderance of the evidence."  However, the state habeas court had an alternative basis for holding that Freeney had not established deficiency.  That court applied *Wiggins v. Smith*[80] and held that trial counsel's failure to investigate the alleged abuse was reasonable, as neither Freeney, his mother,

---

[75] *Strickland*, 466 U.S. at 694.

[76] *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

[77] 466 U.S. 668 (1984).

[78] 28 U.S.C. § 2254(d)(1).

[79] *Shore v. Davis*, 845 F.3d 627, 631 (5th Cir. 2017) (quoting *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013)); *accord Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir. 2015) (noting that, with respect to whether a decision involves an unreasonable application of clearly established federal law, "we focus on 'the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.'" (quoting *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014))); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).  *But cf. Salts v. Epps*, 676 F.3d 468, 479-80 (5th Cir. 2012) (noting that the standard for assessing whether a state habeas court's decision involved an unreasonable application of clearly established law "does not speak to the standard of review where a state court applies erroneous law.").

[80] 539 U.S. 510, 527 (2003) ("In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.").

nor any of the other witnesses that trial counsel interviewed disclosed it.[81] There was accordingly no "known evidence [that] would lead a reasonable attorney to investigate further."[82]   No reasonable jurist could debate the propriety of the state habeas court's application of *Strickland* on this point.

Freeney argues that the state habeas court shifted the duty to investigate mitigation evidence from trial counsel to Freeney and the potential mitigation witnesses by purportedly requiring them to "come forward and disclose relevant information to trial counsel."  This is so, he contends, because the state habeas court noted that trial counsel "cannot be faulted for failing to discover Freeney's physically and mentally abusive childhood because neither Freeney nor witnesses volunteered the information."[83]   But Freeney mischaracterizes what the court did.  The state habeas court concluded that "[c]ounsel [had] conducted a reasonable investigation into Applicant's background."[84]  In explaining why that investigation was reasonable, the court noted that interviews with mitigation witnesses and Freeney himself, as well as years of medical records collected from Freeney's psychiatrist, did not uncover evidence of abuse by his mother, evidence which the court was "not convinced" existed.[85]  The Supreme Court has observed that *Strickland* "does not force defense lawyers to scour the globe on the off chance something will turn up."[86]  Instead, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste,"[87] and "when a defendant has given counsel reason to believe that pursuing certain

---

[81] SHCR at 292.

[82] *Wiggins*, 539 U.S. at 527.

[83] SHCR at 286.

[84] SHCR at 285.

[85] SHCR at 285.

[86] *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

[87] *Id.*

14

## No. 16-70007

investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."[88]   No reasonable jurist could call into question the state habeas court's application of *Strickland*.  For the same reasons, Freeney's claim that a COA should issue because trial counsel improperly "abandoned" its investigation into his background, is without merit.

Freeney alleges that his trial counsel failed to contact his brother, Jesse Kelly, Jr., after receiving notice that the state planned to offer evidence that Freeney sexually assaulted Kelly as a child.  This is inaccurate, as trial counsel subpoenaed Kelly and informed him that he may be called as a character witness.[89]   Furthermore, evidence of Freeney's assault on his brother would have been inconsistent with other evidence and with trial counsel's mitigation theory that Freeney "was a law-abiding, well-mannered child who eventually had a psychotic break . . . in the National Guard."[90]  Accordingly, even if trial counsel were deficient with respect to their interactions with Kelly, jurists of reason cannot debate that Freeney cannot establish prejudice on this point.

Freeney next sets forth a series of claims challenging the state habeas court's conclusion that he failed to prove prejudice.  First, he argues that a COA should issue because the court applied the incorrect legal standard to its prejudice analysis.  Under Texas law, a defendant may not be sentenced to death if the jury returns a special verdict finding that, after "taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance . . . to warrant"

---

[88] *Strickland v. Washington*, 466 U.S. 668, 691 (1984)

[89] SHCR at 42.

[90] SHCR at 292.

a life sentence as opposed to death.[91]   Freeney asserts that because this standard does not affirmatively instruct the jury to balance mitigation evidence against aggravating factors, the state habeas court improperly discounted Freeney's new mitigation evidence due to its "double-edged" nature in holding that he had not established prejudice.

The affidavits presented to the state habeas court contained evidence that may well have led jurors to perceive Freeney to be morally culpable for the murders and would have undermined his mitigation theory that adult-onset mental illness led him to commit the crimes.  As the state habeas court noted, two of the new affidavits revealed that Freeney frequently beat his brothers when he was young[92] and others indicated that his violent tendencies were long-standing.[93]   This contradicts trial counsel's stated mitigation theory.[94]   The jury could also have found that Freeney's new mitigation evidence would have been insufficient to rebut the brutal "circumstances of the offense."[95]   The jury instruction does not preclude a death sentence whenever a defendant may plausibly assert that outside circumstances contributed to his crime, but rather leaves it to the jury to define the contours of the circumstances that mitigate an otherwise compelling case for capital punishment.  This consideration is relevant to whether prejudice has been established with "reasonable probability."[96]  No reasonable jurist could debate

---

[91] TEX. CODE CRIM. PROC. art. 37.017, § 2(e)(1) (jury instruction for mitigation).

[92] SHCR at 274, 276.

[93] *See* SHCR at 276-77, 281.

[94] *See* SHCR at 241 (affidavit of trial counsel Robert Loper) (explaining that mitigation witnesses called at trial "were called to show that [Freeney] never exhibited violent or criminal behavior; that [he] was abused as a child; that he was a good, normal kid; that [the witnesses] could not believe he would have committed the offense; that he was a loving father; and that he had a mental illness").

[95] TEX. CODE CRIM. PROC. art. 37.017, § 2(e)(1).

[96] *Strickland v. Washington*, 466 U.S. 668, 695 (1984).

that it was appropriate for the state habeas court to take these aspects of Freeney's undiscovered evidence into consideration in evaluating prejudice.

Second, Freeney contends that the state habeas court "ma[de] the state-law evidentiary findings that would have been at issue at sentencing" with respect to his undiscovered mitigation evidence. While that court did observe that some of the undiscovered mitigation evidence suffered from defects that might make it inadmissible or less credible,[97] no reasonable jurist could debate the propriety of its doing so. Consideration of the quality of a habeas applicant's new evidence is necessary to establish the likelihood that such evidence would have led to a different outcome at trial. This court has sanctioned state habeas courts' consideration of both the admissibility[98] and the credibility[99] of new evidence in the evaluation of the prejudice prong of a habeas applicant's *Strickland* claim. Therefore, that doing so is contrary to or an unreasonable application of clearly established federal law is not a proposition debatable among jurists of reason.

On review of the state court's "ultimate legal determination,"[100] jurists of reason could not debate whether the state habeas court acted contrary to or unreasonably applied *Strickland* in concluding that (1) Freeney failed to make "a substantial showing of the denial of a constitutional right"[101] because Freeney's trial counsel acted in an objectively reasonable manner in investigating, selecting and presenting a mitigation theory, and that (2) Freeney failed to show "a probability sufficient to undermine confidence in the

---

[97] *See* SHCR at 294-95.

[98] *See Neal v. Puckett*, 286 F.3d 230, 241-42 (5th Cir. 2002) (en banc) (per curiam)

[99] *See Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (per curiam).

[100] *Shore v. Davis*, 845 F.3d 627, 631 (5th Cir. 2017) (quoting *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013)).

[101] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

outcome,"[102] that is, "a reasonable probability" that but for counsel's failure to discover and present an alternative mitigation theory, the jury would have found in his favor.[103]

## C

Lastly, Freeney argues that reasonable jurists could debate whether AEDPA deference applies because the state habeas court's decision was "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[104]   Freeney asserts that it was unreasonable for the state trial court to find that trial counsel was unaware that Freeney was abused by his mother, and unreasonable in finding that trial counsel's investigation of the matter was not deficient.  Freeney asserts that Leon Dwight Bey's testimony that Freeney had told Bey he had been "abused as a child"[105] put trial counsel on notice of abuse at the hands of Freeney's mother, contrary to the state habeas court's finding that trial counsel was unaware of "physical abuse growing up in Kelly's household."[106]

A state habeas court's factual determinations are "not unreasonable merely because a federal habeas court would have reached a different conclusion in the first instance."[107]   Here, reasonable jurists could not debate whether the state habeas court was unreasonable in finding that trial counsel lacked a reason to investigate whether Freeney was subjected to physical abuse by his mother.  Trial counsel was aware of, and based a mitigation theory in part on, evidence that Freeney had been abused by his uncle.[108]   Freeney

---

[102] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[103] *Id.*

[104] 28 U.S.C. § 2254(d)(2).

[105] 22 RR at 127.

[106] Supp. SHCR at 102.

[107] *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[108] *See* SHCR at 241 (affidavit of trial counsel Robert Loper).

No. 16-70007

offered evidence to that effect at trial.[109]  Bey's reference to "abuse" in his testimony was not specific, would have been consistent with abuse by Freeney's uncle, and gave no reason for trial counsel to suspect abuse by Freeney's mother.

Even if Freeney were correct that the state habeas court's finding in this regard was unreasonable, the state court's conclusion that Freeney failed to establish prejudice is not debatable among jurists of reason.  Freeney did show a probability that the jury would have ruled in his favor that is sufficient to undermine confidence in the outcome at trial.  Accordingly, no reasonable jurist could debate that the state habeas court's disposition of Freeney's *Strickland* claim was based on an unreasonable finding of fact.

## IV

Freeney raises a number of additional bases for a COA in a supplemental application submitted to this court.  We need not reach the merits of these claims, as Freeney did not present them to the district court.  We have previously said that "[a] district court must deny the COA before a petitioner can request one from this court."[110]  We therefore lack jurisdiction to grant a COA on these grounds.[111]

*          *          *

For the foregoing reasons, Freeney's request for a COA is DENIED.

---

[109] *See* 22 RR at 236 (testimony of Dr. Daneen Milam) (opining that sexual abuse by Freeney's uncle could facilitate but not cause a psychotic break).

[110] *Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006) (per curiam) (quoting *Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1998)).

[111] *See id.* ("[J]urisdiction is not vested in this Court because the district court has not yet considered whether [a] COA should issue." (quoting *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997))).